Good morning, Your Honors, and may I please report on Benjamin Galloway, Assistant Federal Defender, on behalf of Appellant Marc Turner. At issue in this case is whether the District Court erred in denying Mr. Turner's motion to terminate supervised release on the basis that his supervised release had not begun during his post-sentence detention under the Walsh Act. Section 3624E, which governs the commencement and tolling of supervised release, provides that supervised release begins upon release from imprisonment and thereafter runs except during periods of imprisonment in connection with the conviction. In this case, there is no dispute that Mr. Turner's term of imprisonment expired on September 7, 2007, and the government concedes that his custody thereafter was not any part of his criminal sentence. But he remained in custody of the Bureau of Prisons, correct? That's correct, pursuant to civil detention under the Walsh Act. And the Supreme Court in Comstock described the civil nature of Walsh Act detention as a modest addition to a set of mental health statutes designed to provide for the post-sentence detention of the mentally ill. So the question before this Court is whether or not this post-sentence civil detention under the Walsh Act can somehow be construed as imprisonment and imprisonment in connection with a conviction under 3624E. I would submit the language of the statute in this Court's decisions in Morales-Alejo, Sullivan, and Miller answer that question in the negative. The Court in Morales-Alejo focused on the terms imprisonment and imprisoned as consistently used to describe penalty or sentence, contrasting it to detention, which is a mechanism used to describe a mechanism to preserve the safety of the community. In Sullivan, this Court again focuses on 3624E's focus on the type of confinement rather than the mere fact of confinement. And again in Miller, the Court notes that the crucial issue is whether or not the detention is part of imprisonment. At least four district courts have considered this issue and determined that a civil detainee's post-sentence civil detention under the Walsh Act pre-commitment did not serve to toll their supervised release. Can I ask you one question? I understand the argument in trying to put the two statutes together that your client, who actually had a hearing, correct? He did have a hearing and was released as of Friday. There's a 14-day appeal period. So unless that release order is stayed, he should be released a week from Friday. So for your client, how long was he in the civil detention post-release from imprisonment? About four and a half years, from September 7, 2007 until Friday. And his supervised release term is? Twenty-two months. Twenty-two months. So if it were to run, he would be done with his supervised release now. He would have completed it July 7, 2009. So two questions I have. One goes back to the Supreme Court's decision in Johnson, which was a little bit different case. But writing for the court there, Justice Kennedy said, supervised release does not run while an individual remains in the custody of the Bureau of Prisons. So I would have less concern about your argument if I didn't have that statement by Justice Kennedy. Your client, although not imprisoned, was in the custody of the Bureau of Prisons, correct? Correct, Your Honor. And I'd raise several points about Johnson. It's, of course, the case the government and the district court rely so heavily on in support of their position. First, Johnson is a pre-4248 case, which does not address indefinite civil detention under the Walsh Act because the Walsh Act didn't exist in its form at the time. Secondly, Johnson was entirely in the context of imprisonment in connection with a conviction. Mr. Johnson served his sentence of imprisonment until the day he was released. By contrast, Mr. Turner completed service of his sentence of imprisonment years before his release next Friday, if that does occur. Importantly, Johnson limits itself by its own language. Johnson says there can be little doubt about the meaning of release in the context of imprisonment. Of course, the context here is different from the release of imprisonment. Mr. Turner remains in the custody of the Attorney General and Bureau of Prisons, but not as part of his imprisonment. And as the Court in Miller told us, context provides important distinctions. Again, Sullivan and Miller consider this issue post-Johnson, and they hold that it's not the fact of confinement, but the type of confinement that's at issue. And here we don't have imprisonment. The reality is that if you take the government's position, then presumably there could be an indefinite postponement tolling of any supervised or supervision. If somebody held 10 years, 20 years, whatever, it would just never start. Is that correct? That's precisely right. That's one of the key problems with the government's position. By construing this post-sentence detention as imprisonment, it runs afoul of the ex post facto clause, for starters, which prohibits Congress from enacting any punishment greater than existed for the act at the time it was committed. In this case, the maximum penalty Mr. Turner could serve in imprisonment is two years. Go ahead. The other thing is that there is some intellectual collision when you think of supervised release, and then you say, well, but actually he gets credit for being in the civil holding detention. So therefore, he can't be under the supervisor's release statute, as it says. He can't be released by the Bureau of Prisons to the supervision of a probation officer. So do we just ignore that language, or how do we give meaning to the two statutes in congruity? I would refer the Court to the decisions in Sullivan and Miller, which address this issue after Johnson. And in Sullivan and Miller, the courts recognize that it's not necessary that the individual be free and walking the streets to be on supervised release. Both of those individuals were detained in the county halfway house, a pre-release facility. Sullivan, not any part of his federal sentence of imprisonment. Miller, as part of his federal sentence of imprisonment. This Court held that in Sullivan, he was his supervised release did run because he was not detained as part of his federal sentence of imprisonment. By contrast, Miller's did not. And so this Court recognizes that you can be detained and be on supervised release, as the Court had in Rao where you can also be on supervised release, but in the custody of the Attorney General. Would you want to save your remaining time? Yes, please, Your Honor. Thank you. All right. Here we go. Now we'll turn to the case of the United States v. Bolander. Mr. Brand, are you ready? Okay. Yeah, I'm ready. Thank you. I'm at a slight disadvantage, Your Honor, because we lost our transmission during co-counsel's argument. And we just got it back. So, unfortunately. Well, I can say that he eloquently argued the principles that were in his brief with some flourish. Well, that's good, Bruce. So I don't think anything he said would be of surprise to you. Let's put it that way. You would like it, and you can actually be here next time if you want to. Well, yeah, I'm sorry I'm not there. It's a beautiful place. Well, I think this is the second or third case that I've heard where you've done this, where you've asked to be there because you've got a, I think, a junior high daughter or something like that. And we applaud your parenthood, but understand that when you do it this way, there are some disadvantages. I understand. You may proceed. I don't know. I want to join my co-counsel's arguments, but I don't want to repeat the arguments that he made. So I'm going to be brief. And basically, I think that the outcome of this case is controlled and dictated by your colleagues' opinion and Morales-Alejo. That case is controlling. It was decided in 1999. And I think that with respect to the two statutes, 3624, 42, 48, the government tries to conflate those together. And actually, they're like two individual trains, parallel trains, with different arrival points and different arrival times. There's no real intersection there. 3624 deals with the expiration of a prison term, and 42, 48 has to do with civil detainment procedures. I don't see any reason or logic or fact to conflate those statutes in the way that the government suggests. May I ask a question as to your client? I understand your client is still in the civil detention status. Is that right? He's been committed, Your Honor, on January 19, 2012, five years after being detained beyond his prison term. Correct. He had a hearing, a commitment hearing, and was committed. Okay. So my question was this. Since he is in the civil detention status, is your argument or your client's case right? Because we don't have a situation where he's going to be released and then we need to know, does he have to go on supervised release or does he not have to go on supervised release? I mean, so I'm asking if, because it's, and I'm not saying it will happen, but what if your client were detained there for his lifetime? This would never become an issue, correct? So if there is some consequence at this point, perhaps you could articulate that for us. Well, theoretically that's correct, but I think there is a consequence. I think it is right because if and when he's released, he then will face the problem of having to face a criminally generated supervised release or will be released free and clear from his civil commitment. So I think it very definitely is right, and to make him go through an extended litigation after at some future point when he is released would be a tremendous burden on his civil liberties. So, yes, I do think it's right, and it's not clear what's going to happen in the future, but I think the Court needs to decide that issue now so that if and when he's released, he knows where he stands and will not be facing extended litigation to answer the question that we're asking the Court to answer today. Thank you. I think with that, if there's no more questions, I will reserve a couple of minutes for rebuttal. All right. We'll hear from the government. Good morning, Your Honors. Richard Friedman for the government in both cases. When a prisoner is certified under 4248, the filing of the certification shall stay his release. The stay deprives BOP of the power to release him from imprisonment. It can change his conditions of confinement, but it does not and cannot release him from imprisonment. May I stop right there? Do you distinguish between imprisonment and confinement in a civil context under 4248? Yes. Yes, after the petition to commit him is granted, as did happen in Mr. Bollender's case. When that order becomes effective, the order by its terms transfers his custody from BOP to the Attorney General under 4248. That becomes a civil commitment, and the Supreme Court has already decided, and we don't contest, that a civil commitment is not imprisonment. So his supervised release begins. If he's released because the petition for commitment is denied, he has been released from imprisonment by the order of the court, and his supervised release begins. So that's where I'm having some trouble, okay? I just want to tell you, in trying to put these together, the supervised release statute says that a prisoner shall be released on the date of expiration of the prisoner's term of imprisonment. Is it your view that the Walsh Act actually can extend the term of imprisonment for a criminal conviction? No. It does not extend the term of imprisonment. Okay. But it stays. So then let's go back. It stays the release. Okay. So you could be, you can be imprisoned, and you could complete your imprisonment but remain in the custody of the Bureau of Prisons, correct? Correct. Because the statute happens to use a legal term, stay. A stay deprives the actor of power. Congress might have done what the appellants are arguing. It might have said, upon the certification, the person will be transferred to a civil pre-commitment custodian. It didn't do that. The plain meaning also serves the policies of both supervised release and 4248. Before a respondent can be committed on a 4248 petition, the district court, in this case in North Carolina, must make a finding that the person will have serious difficulty refraining from sexually violent behavior or child molestation. In Mr. Turner's case, the district court, in fact, relied on his terms of supervised release to provide enough supervision so that he would be able to refrain. If supervised release did not apply, according to our view of the plain meaning of the statute, more respondents will get committed because otherwise they will be released with no supervision. Counsel, what troubles me is the, when you look at the language of 3624C, or maybe it's E, I apologize, it indicates a term of supervised release does not run during any period in which the person is imprisoned in connection with a conviction for a federal, state, or local crime unless the person is for a period of less than 30 consecutive days. So in the circumstance we're talking about here, someone is convicted for the commission of one of these crimes. A stay comes in accordance with the act that you talked about, and then the person is civilly committed. They don't ever leave. It's just a different, one's civil, one is criminal. But the statute that I just cited, 3624E, talks about that the release period doesn't run during a period where the person is convicted for the conviction of a crime. Once that's served, even if it stayed, you've transferred to a civil commitment. They're no longer there based upon the commission of the crime. So how, then, does this statute stay the running of the supervised release period? The provision you referred to is a tolling provision. Right. And that, in our view, applies only once supervised release has begun. If I may, let me explain the government's view of the three stages of when supervised release starts and stops. First, it cannot possibly run while the term of imprisonment is continuing, because it has been imposed to run after the term of imprisonment. So, for example, when BOP releases a prisoner during his term of imprisonment to a work release program, he is not on supervised release because his term of imprisonment has not expired. That's the Miller case. Once his term of imprisonment has expired, he may go on supervised release. The term of imprisonment for the crime. That's correct. His term of imprisonment for the offense for which he has been ordered to serve a term of supervised release. And that's basically the judgment entered by the district court. Correct. And that's the Miller case. After his term of imprisonment has expired, supervised release may begin but only when he is actually released from imprisonment by whoever is holding him in imprisonment. And this turns to Sullivan. In Sullivan, the person is held in a state prison, serving both his federal and state sentences. His federal sentence expires. Now he might start to serve supervised release when he is released from imprisonment. The state releases him to a halfway house. Under federal law, halfway house confinement is not imprisonment. So his federal supervised release begins, even though under state law he is still serving his state term of imprisonment while in the halfway house. Stage three. But that's still based upon conviction of a crime and imprisonment for the crime, right? Well, at that stage, he was imprisoned on the state crime. When he was released from that imprisonment, if he's released to something that is not imprisonment, supervised release begins. Now the third stage. Okay. Again, my struggle here is the predicate of the crime. Correct me. We're getting now to the third stage. Okay. Go ahead. We're getting now to the third stage. After supervised release has begun, if he is already, if he is re-imprisoned, supervised release will only toll if that re-imprisonment is in connection with a conviction. So if he's picked up by the local police and put in jail, he's imprisoned there but not in connection with a crime. And if he's denied bail, he's imprisoned but not in connection with a crime. And that's moralis. Now here's what happens in the 4248 case. He was imprisoned while serving his sentence. Before the sentence expired, the 4248 stay deprived the Bureau of Prisons of the power to release him from imprisonment. There might be an argument that that's unconstitutional, that you can't hold a pre-commitment person in jail, that instead you have to transfer them to a civil custodian. But if that argument were made and succeeded, what would happen for supervised release? That other court would order him released and it would begin when he was actually released, not when he should have been released. So what has happened under this statutory scheme, because Congress used the term stay, a stay deprives an actor of power, the Bureau of Prisons had the responsibility and the power to release him on the expiration of his term of imprisonment, but then the stay took that power away. And he is still imprisoned until the district court in the Eastern District of North Carolina rules on the petition. Okay. So let's stop there, because it doesn't use the word imprisonment that if you go to the top of the Walsh Act, at the top of it, it says a person who is in the custody of the Bureau of Prisons and you could be in the custody of the Bureau of Prisons for a variety, immigration, detention, all kinds of things, you might be in the custody, correct, and not be imprisoned. Isn't that true? As we understand that provision, the custody of the Bureau of Prisons must be legal custody serving a term of imprisonment. For example. But where do you get that? That's how you understand it. Where does it say that? The Fourth Circuit has had an opportunity to interpret the provision. And in a case called Joshua, it held that when you had a military prisoner convicted of a court-martial and he was being housed in a Bureau of Prisons facility and was in BOP custody, that that was not custody for purposes of 4248 because he was convicted of a military crime, not a Federal crime. Now, one might differ about that interpretation, but we are ceding to that is the meaning of custody. But my point is this. You said, well, it might be unconstitutional, but so what almost? Well, that is a big problem. My concern is that it is potentially unconstitutional if you have somebody who has a criminal sentence and you're supposed to be released from your criminal sentence, and you say, no, you're still under your criminal sentence until such time as we get around to giving you a hearing and decide if you should go into civil commitment. My question is why, at the conclusion of — in order to save this from an unconstitutional interpretation, why at the conclusion of your imprisonment, and you are not supposed to be imprisoned longer than the court ordered you, why at the conclusion of that are you not in the custody of the Bureau of Prisons, but not necessarily imprisoned on your criminal conviction? Why are you not now in what I'll call civil land? You are not imprisoned in connection with your original conviction. You are imprisoned because the Bureau has been told not to release you from imprisonment. Now, it is — Well, it's been told not to release you from custody. It doesn't say anything about imprisonment. Well, it says it shall stay his release. That is different, though. But see, that's different. That's like saying — We understand. It doesn't say I'm going to add to your sentence. It's going to say I can't let you out right now. Okay? And the reason I can't let you out is that I have this statute, which has been declared in broad terms the ability to civilly commit somebody for sexual offense. I have a statute with these procedures, and it's because of this statute, which kicks in a civil procedure, that I can't let you out of my prison, right? Okay. But if I may, Your Honor, we are not arguing that it is extending his term of imprisonment on his original sentence. We are saying that the way the stay provision works is that he stays in prison. Now, the Bureau happens, quite intelligently, to change his conditions of confinement so that they comport with the due process requirements for somebody who was being held but not imprisoned on a term of imprisonment. However, we are simply giving a plain meaning to the term stay, because stay is a term of art, and we caution them. And you're telling me that they keep them in confinement so that they're not under a term of imprisonment, which is sort of what I was saying. Well, if Congress had provided to transfer the custody to a civil custodian under 4248, that would be the result. But we caution that that would be inconsistent with both the purposes of supervised release and the purposes of 4248, because if the petition for commitment is denied, the person would be released with no supervision, and a court viewing the petition for a commitment would tend to commit more people, because it would be saying, this person is either going to go out scot-free with no supervision. I'm really struggling, I think, with the same issues that Judge McKeown is here on. When you look at 3624E, it talks about imprisonment, the predicate of being a conviction for a crime. You speak of a stay. The stay has to do with whether the person is released from jail. But at that point, the person is confined based upon a civil commitment. They're quite different. And so the fact that you have stayed the person doesn't mean that the imprisonment under 3624E is continuing. You've got a new basis for holding them that the Supreme Court has upheld. But the fact that it stayed, if anything, trips you up, I think, because you're not extending the prison term. That gets into the constitutional issues that Judge McKeown mentioned before. So I don't – I'm having real difficulty seeing how 3624E gets continued into the civil – what do you call it, civil land? I call it civil land. Civil land, all right. Well, the premise of our statutory construction on that point is that the provision for imprisonment in connection with a conviction is solely a tolling provision. Right. But that's important. But that's what this case is about, isn't it? No. No. Because it only comes into play once supervised release has begun. In this case, the issue is when does it begin? It begins on release from imprisonment. If the 4248 stay is construed as a direction to the BOP to transfer the prisoner to a civilian custodian, then his supervised release would begin. And that's what happens when he is committed. Counsel, with respect, you're misconstruing 3624, because this says the term of supervised release does not run during any period in which the person is imprisoned in connection with a conviction for a Federal, State, or local crime. What we're talking about here is that period is over. We'll say that's day X. On day X, the conviction or the imprisonment for that crime is over. And normally, then this period of supervised release would begin. You say the government comes in, gets a stay. It's a stay as to confinement. It continues to be whatever you want to call it. If the person is in prison, the person is not in prison based upon the crime. The person is in prison or confined based upon the terms of the wall check. Isn't that right? We do not read that sentence about tolling in isolation. The beginning of sub E describes when the supervised release begins. It begins on release from imprisonment. And then the tolling provision of imprisonment for conviction of the crime. We disagree. The language of the statute does not say release from imprisonment in connection with a conviction. And this is key. That's what it does say. No, it does not. Supervised release begins on release from imprisonment. Next sentence. No, no. You're reading two different sentences. Yeah. I'm looking at E. And that says, does not run during any period in which the person is imprisoned in connection with a conviction for a Federal, State, or local crime. Unless it's for less than 30 days. Next sentence of E. Where it says, a prisoner whose term of release includes a term of imprisonment includes a term of supervised release shall be released by the Bureau of Prisons at the expiration. So that's their obligation. And then it says, the term of supervised release commences on the day the person is released from imprisonment. It does not say released from imprisonment in connection with a conviction. So his supervised release begins when he's released from imprisonment. Correct. And that's where we come down to the collision between custody and imprisonment, because the Walsh Act talks about custody, not imprisonment. And if you're certified under Section A of the Walsh Act, there's no time limit on when you can have your hearing, correct? Well, there is, actually. How long? There is a due process limit. Okay. Well, some outer limit, which by now there could be years, right? The delays were substantial because of the Comstock litigation, but no longer so. I can represent to the Court that now that Comstock has decided on the constitutionality of this and now that the backlog is cleared, the Bureau is certifying persons long before the expiration of their term of imprisonment, and there's a standing order in the Eastern District of North Carolina that all these cases must be brought to trial on the commitment petition within 110 days. And I may represent to the Court that I have been told by the U.S. Attorney's Office in Eastern North Carolina that the recently filed cases — But the Prosecutor is about to get — he's been held there for a long time. Has been. He was able to get out because after being held a long time, they actually certified or had hearings to say, you know, he wasn't a problem. And so now, having been held in the custody of the Bureau, your position is he still needs to have supervised release, correct? Yes. And this situation actually was addressed in Johnson toward the end of the opinion. If there is an inequity because he has been held beyond his proper term of imprisonment because of these delays, he could petition to the supervised release court, which would help restrain him from acting out on those proclivities, or instead releasing him with no conditions, we would be arguing to the sentencing court that although    he's been held for a long time, he still needs to have supervised release, correct?  And I think it's unfortunate that it took so long because of the Comstock litigation. So it's a little disingenuous for you to sit here and say, oh, just hop on down to the sentencing court and ask for some relief, because the government would oppose that. Yes, we would. But the statutory framework — So I don't think it's fair for you to sit here and tell us, don't, you know, trust  us, we had a big due process problem, and now we fixed that. You can always get relief in the sentencing court, but, of course, we would oppose that. So, I mean, when you come here on behalf of the government, I think you have an obligation to not necessarily take this to the nth degree, but to take it to do what's right in connection with the statute. And I think that it's disingenuous for the government to make the representation you just made here. If you don't want to support a release, fine. But don't tell the Court that there's another safety valve for this defendant when, in fact, there's not. If there might be in a case where the defendant showed there was no merit whatsoever to the petition for commitment, and he shows I don't need any supervision and I shouldn't be held to my term of supervised release because of that, now, that would be an appropriate case. And I don't believe, Your Honor, that I'm being disingenuous to the Court. I'm trying to convey the current state of affairs. Let us suppose. Okay. I think you've well exceeded your time. We've asked you a lot of questions. Thank you, Your Honor. We appreciate your argument. We appreciate it. I mean, it's a complicated statute, even though it looks simple. I would say this. I read Kafka's The Trial many years ago, and this case brings it all back. You may proceed with rebuttal. Thank you. It's important to note that Section 4248 does not operate to stay release from imprisonment. It stops short of that. It says stay release. And so from that point on, we have to look at whether or not we're talking about release from imprisonment in the context of 3624E or release in the context of the Walsh Act. The government's entire argument hangs on an erroneous conflation of those two things. And I think it really flies in the face of the government's arguments preserving the Walsh Act in other cases, saying it's not imprisonment. It's civil in nature. Sure, it may be a little punitive, but it's not imprisonment. It's civil detention. Well, this then is four and a half years of civil detention. It's not imprisonment, and for the government to say that it is now is in direct contradiction to those other cases. I would refer the Court to the district court's decision from Alaska and Brown, which took this issue head-on and said that staying one's release from imprisonment in connection with the conviction under 3624E is distinct from staying one's release under the Walsh Act. One is release. And would you agree that there at least, as a practical matter, would undermine potentially the district court's view of supervised release, which is I'd like to put this person into the community, but I want to monitor them and make sure everything no more crimes are committed, and particularly that they're abiding by other terms in terms of proximity to schools or children or things like that? If they're just held in civil detention, you never get to play out the supervised release. That is a conundrum created by the statute, Your Honor. I would point out that communities throughout the country have taken ample steps, steps that have been litigated throughout the courts, to account for those things, such as 290 registration, Internet registration, stay away from all such things as schools and communities. And the laws now, given the focus on this issue, are, I would submit, more than enough to address that issue. But I think what it comes down to is that to construe this as staying release from imprisonment, as Morales-Alejo says, imprisonment is penalty or sentence, is simply undermines the government's argument to preserve the constitutionality of the Walsh Act. They can't have it both ways. Thank you. And we have to construe this law presumably in a way, if possible, that avoids the constitutional issue, right? I would think that's right, Your Honor. Thank you. Mr. Brennan, do you want to proceed with rebuttal? Yes. I want to address the Court's question regarding, well, what happens if they're committed, they're released, and then there's no supervised release. And I would like to point to 4248 and the restrictions, the severe restrictions that that statute imposes on anybody committed under the Walsh Act. Confinement in the federal facility will last until either the person's mental condition improves to the point where he is no longer dangerous with or without appropriate ongoing treatment, in which case he will be released, or the state assumes responsibility for his care and treatment. The Walsh Act also provides for conditional release if they feel that somebody is a danger. It provides for revocation if somebody, for example, violates in some way. It, in fact, imposes more restrictions than supervised release does on people that are committed under the Act. There is a stringent, under the terms of the statute, a stringent procedural regimen that they have to follow before anybody would ever be released under the Walsh Act. And I would like to point to 4248 and the restrictions that that statute imposes or submit takes the place of supervised release and is probably much, maybe more effective in terms of dealing with this particular issue. Thank you. Thank you. The two cases just argued, United States v. Turner and United States v. Bolander, are submitted. I want to thank all the counsel for your argument. It's a very complicated and interesting statute. We will now adjourn the court session, but we will remain to answer questions from the students. We will not entertain any questions about the cases themselves or the substance of the cases, but we're happy to answer questions about the Ninth Circuit, about appellate argument, life, or anything else you want to ask. So the floor is open.
judges: Noonan, McKeown, Smith